IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.4:05-CV-152-Y |
| | § | |
| AMERICAN TRAIN DISPATCHERS | § | |
| ASSOCIATION | § | |

ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pending before the Court is plaintiff BNSF Railway Company ("BNSF")'s Motion for Preliminary Injunction or, in the Alternative, for Expedited Decision [doc. # 4], filed March 9, 2005, and Motion for Partial Summary Judgment [doc. # 20], filed March 29. Having carefully considered the motions, responses, and replies, the Court concludes that the motion for preliminary injunction should be DENIED and that the motion for partial summary judgment should be PARTIALLY GRANTED and PARTIALLY DENIED.

I. RELEVANT BACKGROUND

Defendant American Train Dispatchers Association ("ATDA") is a collective-bargaining representative for train dispatchers employed by BNSF, a rail carrier. A 1984 collective-bargaining agreement between ATDA and BNSF governs personal-leave time for BNSF dispatchers, and provides that:

> Personal leave days . . . may be taken upon 48 hours' advance notice from the employee to the proper carrier officers; provided, however, such days may be taken only

1

when consistent with the requirements of the carrier's service.

(Verified Compl. at Ex. 2, provision III. B.).  A 1997 agreement also provides that dispatchers working on a rest day may take compensatory ("comp") time in lieu of receiving monetary compensation; such comp time "shall be requested and granted in the same manner as personal leave days." (*Id.* at Ex. 1, Article VIII).

In August of 2000 BNSF served on ADTA proposed changes to the existing collective-bargaining agreements.  One proposed change would modify the existing practice of granting dispatchers' comp-time and personal-leave requests when a replacement is available at either a straight-time or overtime rate to only granting such requests when a replacement is found at a straight rate.  (App. to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. at 3-4).  The parties arrived at a tentative agreement whereby only the practice for comp-time requests would change, but the tentative agreement was rejected by a vote of ATDA-union members.  ATDA's membership eventually ratified a different tentative agreement that did not alter the method for granting either personal-leave or comp-time requests; that agreement became effective September 1, 2004.

On January 1, 2005, ATDA contends that BNSF began to restrict the use of comp time or personal leave solely to periods when replacement employees would be paid on a straight-time basis.  BNSF avers that it simply refined its estimate for the number of daily absences it could permit due to an increase in the number of

vacations and other absences taken by its dispatchers.  As the number of absences per day rose, BNSF posits that the amount of absences it could grant consistent with BNSF's "requirements of service" became fewer in number.  While BNSF concedes that the number of comp-time requests granted decreased, it avers that the decrease is solely due to BNSF's heightened needs for manpower to accommodate the additional absences of its dispatchers and not due to any changes to BNSF's decision-making process overall.  (Pl.'s Mem. in Support of Mot. for Partial Summ. J. at 5).

In a March 2 meeting between BNSF and ATDA, ATDA informed BNSF that it regarded BNSF's practices regarding comp-time requests as a unilateral change to the parties' collective bargaining agreements and as a violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et. seq*.  Following the March 2 meeting, at around 4:00 p.m., ATDA called a strike, whereupon train dispatchers in Fort Worth stopped work and left the office.  After the Fort Worth dispatchers began leaving their posts, ATDA and BNSF entered into an agreement whereby

> pending resolution by a federal court whether the dispute between ATDA and BNSF over the carrier's treatment of comp time and personal leave requests is a major or minor dispute under the Railway Labor Act, (a) BNSF will revert to the practice it followed in 2004 regarding consideration of such requests, and (b) the members of the ATDA will immediately return to work.

(App. to Def.'s Opp'n to Pl.'s Mot. for Prelim. J. at 27).  After the parties entered into their agreement, about two hours after the

strike began, the dispatchers returned to work. ATDA contends that, pursuant to the parties' March 2 agreement, there is no longer any threat of a strike by BNSF's dispatchers. BNSF avers that the agreement effectively coerced BNSF to adopt ATDA's unilateral interpretation of and changes to the parties' collective-bargaining agreements, thereby inserting a new requirement into the parties' collective-bargaining agreements that BNSF mandatorily provide the same amount of comp time previously granted, regardless of increased absence rates or BNSF's requirements of service. (Pl.'s Mem. in Support of Mot. for Partial Summ. J. at 5).

BNSF filed the above-styled and -numbered cause seeking declaratory and injunctive relief on March 2. BNSF filed a motion for preliminary injunction on March 9 and a motion for partial summary judgment on March 29 seeking summary judgment of counts I and II of its complaint. Counts I and II seek a declaratory judgment that the parties' dispute is a minor dispute pursuant to the RLA and is subject to compulsory arbitration, an injunction against any other form of work stoppage should BNSF apply its new manpower policies to its dispatchers' comp-time requests, and a declaration that any future strikes by dispatchers would constitute a violation of Section 2 First of the RLA, 45 U.S.C. § 152 First. On March 31, ATDA filed a counterclaim against BNSF seeking a declaration that BNSF's conduct violated the RLA, an injunction

4

restoring the status quo of BNSF's former policies regarding comp-time requests, and an award in favor of BNSF employees making them whole for any of their losses due to BNSF's conduct.


## II. LEGAL STANDARDS

A.   Summary Judgment Standard

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).  Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990).  Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party.  *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look

5

at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A moving party may submit evidence that negates a material element of the respondent's claim or defense or show that there is no evidence to support an essential element of the respondent's claim or defense. *See Celotex Corp.*, 477 U.S. at 322-24; *Crescent Towing and Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994); *Lavespere*, 910 F.2d at 178.

To negate a material element of the respondent's claim or

6

defense, a moving party must negate an element that would affect the outcome of the action. *See Anderson*, 477 U.S. at 247. If the moving party alleges that there is no evidence to support an essential element of the respondent's claim or defense, the moving party need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the moving party need only show that the respondent, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex*, 477 U.S. at 325; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

B.   The RLA

1.   Major versus Minor Disputes

The RLA promotes stability in labor-management relations by providing a comprehensive framework for resolving labor disputes, thereby obviating the necessity of resorting to self-help or seeking court intervention.  *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994); *see also Burlington Northern & Santa Fe Ry. v. Bhd. of Maint. of Way Employees ("Bhd. of Maint.")*, 93 F.Supp.2d 751, 756 (N.D. Tex. 2000) (Maloney, J.).  Where a dispute arises that is subject to the provisions of the RLA, the RLA differentiates between "major disputes" and "minor disputes" arising under a collective-bargaining agreement, prescribing different procedures for dispute resolution dependant upon the nature of the dispute involved.  *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 722-28 (1945); *Int'l Bhd. of Teamsters, etc. Local 19 v. Southwest Airlines Co. ("Southwest Airlines")*, 875 F.2d 1129, 1133 (5th Cir. 1989) (en banc) (citation omitted).  A dispute's status as "major" or "minor" is not predicated on the importance of the dispute itself; rather, "the terms refer to the bargaining context in which a dispute arises." *Southwest Airlines*, 875 F.2d at 1133 (citing *Burley*, 325 U.S. at 723).  Generally, "major disputes seek to create contractual rights, minor disputes to enforce them."  *Burley*, 325 U.S. at 723; *see also Consolidated Rail Corp. v. Railway Labor Executives' Ass'n ("Conrail")*, 491 U.S.

299, 302 (1989).

Major disputes relate to the formation of collective-bargaining agreements,[1] efforts to secure such agreements' formation, or changes to such agreements already in existence. *See Hawaiian Airlines*, 512 U.S. at 252; *Burley*, 352 U.S. at 723; *Conrail*, 491 U.S. at 302; *Southwest Airlines*, 875 F.2d at 1133; *Bhd. of Maint.*, 93 F.Supp.2d at 757. As stated by the Supreme Court in *Burley*:

> [major disputes] arise where there is no [collective-bargaining] agreement or where [the parties seek] to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

352 U.S. at 723; *see also Conrail*, 491 U.S. at 302. Major disputes also arise when a carrier makes a unilateral change to provisions in the collective-bargaining agreement through methods not provided for in the agreement. *See Burley*, 352 U.S. at 723; *Conrail*, 491 U.S. at 302-03; *Bhd. of Maint.*, 93 F.Supp.2d at 757 (citation omitted).

In contrast, minor disputes result from grievances over the interpretation or application of particular provisions of existing collective-bargaining agreements covering rates of pay, rules, or working conditions. *See Hawaiian Airlines*, 512 U.S. at 253;

---

[1] Collective-bargaining agreements govern rates of pay, rules, or working conditions of employees.

9

*Burley*, 325 U.S. at 723; *Southwest Airlines*, 875 F.2d at 1133.   In essence, minor disputes "refer[] to disagreements over how to give effect to the bargained-for agreement."   *Hawaiian Airlines*, 512 U.S. at 254.

Where the union and carrier cannot agree on the status of the dispute as major or minor, the Court must substitute its own characterization for that of the parties'.   *See Conrail*, 491 U.S. at 306; *Bhd. of Maint.*, 93 F.Supp.2d at 757.   The Court must first determine "whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action."   *Conrail*, 491 U.S. at 305; *see also Bhd. of Maint.*, 93 F.Supp.2d at 757.   Such an inquiry is essential because a distinguishing feature of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement."   *Conrail*, 491 U.S. at 305; *Bhd. of Maint.*, 93 F.Supp.2d at 757.

Where the claims involved are premised upon the terms of an existing agreement, the Court must examine the nature of the claim itself in conjunction with the agreement.   As articulated by the Supreme Court:

> Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement.   Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.

*Conrail*, 491 U.S. at 307.   The burden on a rail carrier in arguing

that a dispute is minor is therefore relatively light.  *Id.*  A court must also, however, remain cognizant of the fact that collective-bargaining agreements may include both implied and express terms:  "the parties' 'practice, usage and custom' is of significance in interpreting [an] agreement."  *Id.* at 311 (citing *Northwest Airlines, Inc. v. Air Line Pilots Assn., Int'l*, 442 F. 2d 251, 253-254 (8th Cir.)) (quoting *Transportation Union v. Union Pacific R. Co.*, 385 U.S. 157, 161 (1966)).[2]  "If there is any question whether a dispute is major or minor, courts routinely construe the dispute as minor."  *Am. Train Dispatchers Dep't of the Int'l Bhd. of Locomotive Eng'rs v. Burlington N. R.R.*, 855 F. Supp. 168, 171 (N.D. Tex. 1994) (McBryde, J.) (citing *Air Line Pilots Ass'n v. Eastern Air Lines*, 869 F.2d 1518, 1521 (D.C. Cir. 1989) (quoting *Ry. Labor Executives Ass'n v. Norfolk & W. Ry.*, 833 F.2d 700, 705 (7th Cir. 1987))).

---

[2] As stated by the Supreme Court in *Conrail*:

> A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts which control such private contracts. '. . . [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . The collective agreement covers the whole employment relationship.  It calls into being a new common law--the common law of a particular industry.'

491 U.S. at 311-12 (quoting *Transportation Union*, 385 U.S. at 160-161 (citation omitted) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578-579 (1960)); *see also Allied Pilots Ass'n v. Am. Airlines, Inc.*, 898 F.2d 462, 465 (5th Cir. 1990); *Bhd. of Maint.*, 93 F.Supp.2d at 757.

2.    The RLA and Injunctive Relief

To determine whether the Court may enjoin ATDA from striking should BNSF re-assert its desired policy changes, the Court must determine whether the dispute between BNSF and ATDA is major or minor within the context of the RLA.  If the dispute is major, the Court may issue an injunction requiring the parties to maintain the status quo pending exhaustion of the applicable statutory procedures; if no agreement is reached, the parties may resort to self-help.  *Conrail*, 491 U.S. at 302; *Bhd. of Maint.*, 93 F.Supp.2d at 757.  Conversely, should the dispute be minor, the dispute is subject to compulsory and binding arbitration before the National Railroad Adjustment Board ("NRAB") or an adjustment board established by the carrier and the union; such adjustment board has exclusive jurisdiction over the dispute.[3]  *Conrail*, 491 U.S. at 303; *see also Bhd. of Maint.*, 93 F.Supp.2d at 757.  Parties involved in a minor dispute "must resort to the mandatory and exclusive grievance procedures established by the [RLA]." *Frontier Airlines*, 664 F.2d at 541 (citing *Bhd. of Locomotive Firemen and Enginemen v. S. Pac. Co.*, 447 F.2d 1127, 1132 (5th Cir. 1971); *Switchmen's Union of N. Am. v. Cent. of Ga. Ry. Co.*, 341 F.2d 213, 216-17 (5th Cir.), *cert. denied*, 382 U.S. 841 (1965)).

---

[3] The Court notes that, regardless of the nature of the dispute as major or minor, when the dispute arises the parties must first attempt negotiation and voluntary settlement. *See Burley*, 325 U.S. at 724-25; *Int'l Asso. of Machinists & Aerospace Workers, etc. v. Frontier Airlines, Inc. ("Frontier Airlines")*, 664 F.2d 538, 541 n.4 (5th Cir. 1981); *Bhd. of Maint.*, 93 F. Supp. 2d at 757.

Because the statutorily established grievance procedures for minor disputes are mandatory and exclusive, a court's authority to issue injunctions where minor disputes are involved is limited. A court may generally only issue an injunction in a minor dispute where the statutorily mandated grievance procedures have already occurred and been fully processed, *Burlington N. & Santa Fe Ry. v. Bhd. of Maint. of Way Employees ("Santa Fe Ry.")*, 286 F.3d 803, 806 (5th Cir. 2002) (citation omitted); *Frontier Airlines*, 664 F.2d at 552 (citing *Andrews*, 406 U.S. at 320; *Switchmen's Union*, 341 F.2d at 217), or where one party acts in violation of the RLA. *See Conrail*, 491 U.S. at 303; *Santa Fe Ry.*, 286 F.3d 805-09; *Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employees ("Bhd. of Maint. of Way")*, 143 F.Supp.2d 672, 677 (N.D. Tex. 2001) (McBryde, J.) (citing *BMWE v. Atchison, Topeka & Santa Fe Ry. Co.*, 840 F. Supp. 1221, 1236 (N.D. Ill. 1993); *Bh'd of Maint.*, 93 F. Supp. 2d at 758. As stated by the Fifth Circuit:

> It is well established that "the major purpose of Congress in passing the [RLA] was to provide a machinery to prevent strikes." *Tex. & New Orleans R.R. v. Bhd. of Ry. & Steamship Clerks*, 281 U.S. 548, 565, 74 L. Ed. 1034, 50 S. Ct. 427 (1930) (quotations omitted). To further this goal, § 152 First of the RLA comprehensively requires that labor and management "exert *every* reasonable effort . . . to settle *all* disputes . . . in order to avoid *any* interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152 First (1994) (emphasis added). "The obligation under § [152] First is central to the effective working of the [RLA]," and compliance therefore can be enforced by injunction. *Chicago & N.W. Ry. v. United Transp. Union*, 402 U.S. 570, 578-79, 29 L. Ed. 2d

13

187, 91 S. Ct. 1731 (1971).

*Santa Fe Ry.*, 286 F.3d at 805.  To conclude otherwise would allow one party to circumvent the very purpose of the RLA.  Thus, although a court would not otherwise have jurisdiction over a minor dispute, a court may enter an injunction in such a case where "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress [wrote] into the [RLA]."  *Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants*, 489 U.S. 426, 441 (1989)(internal citations omitted); *Hall v. Continental Airlines, Inc.*, 127 F.Supp.2d 811, 813 (S.D. Tex. 2001) (citation omitted).

Furthermore, because "the RLA does not prohibit unilateral action based on a party's own interpretation of the agreement pending exhaustion of arbitration," where one party seeks to enjoin the maintenance of the status quo, a court's authority to enter an injunction is even further constrained:  "only in a narrow set of cases may unilateral action be enjoined during resolution of a minor dispute."  *Southwest Airlines*, 875 F.2d at 1133 (citing *Frontier Airlines*, 664 F.2d at 541); *see also Allied Pilots Ass'n*, 898 F.2d at 465-66.  Such injunctions may issue "where necessary to preserve the jurisdiction of the grievance procedure, or where a disruption of the status quo would result in irreparable injury of such magnitude that it would render any subsequent decision

meaningless."[4]   *Southwest Airlines*, 875 F.2d at 1136 (citing *Frontier Airlines*, 664 F.2d at 542); *see also Allied Pilots Ass'n*, 898 F.2d at 465-66.[5]

---

[4] As explained by the Fifth Circuit:

> First, injunctions may issue to prevent strikes that would deprive the congressionally established grievance procedures of jurisdiction. *St. Louis Southwestern Ry. Co. v. United Transp. Union (UTV)* [("*St. Louis Ry.*")], 646 F.2d 230 (5th Cir. 1981); *Ry. Express Agency, Inc. v. Bhd. of Ry., Airline and Steamship Clerks, Freight Handlers*, 437 F.2d 388 (5th Cir.), *cert. denied*, 403 U.S. 919 (1971); *Flight Eng'rs' Int'l Assoc., AFL-CIO v. Am. Airlines, Inc.*, 303 F.2d 5 (5th Cir. 1962), *appeal dismissed*, 314 F.2d 500 (5th Cir. 1963). Second, injunctions may issue to prevent the carrier from disrupting the status quo when doing so would result in irreparable injury of a magnitude that would render a decision in favor of the unions virtually meaningless, and consequently also deprive the grievance mechanism of jurisdiction. *Local Lodge 2144 v. Ry. Express Agency, Inc.*, 409 F.2d 312 (2d Cir. 1969). *See also Locomotive Firemen*, 447 F.2d 1127, 1132 n.4 []. Third, the determination of whether carrier action is serious enough to warrant jurisdiction-preserving injunctive relief is addressed to the equitable power of the court, with review restricted as to whether there has been an abuse of discretion. *Int'l Brd. of Teamsters v. Braniff Int'l Airways, Inc.*, 437 F.2d 1272, 1275 (5th Cir. 1971).

*Frontier Airlines*, 664 F.2d at 542. Furthermore,

> these exceptions to the limits on federal judicial power in minor disputes arise only when the administrative mechanism that Congress confected breaks down. If the administrative process is available, minor disputes must be routed through it.

*Ass'n of Prof'l Flight Attendants v. Am. Airlines, Inc.*, 843 F.2d 209, 211 (5th Cir. 1988).

[5] The distinction between injunctions sought to maintain the status quo and those sought to uphold the RLA's purpose has not been drawn by any previous court. The Supreme Court held in *Conrail* that courts may enjoin minor disputes, further clarifying that:

> [a]lthough courts in *some circumstances* may condition the granting of a strike injunction [in a minor dispute] on a requirement that the employer maintain the status quo pending Board resolution of the dispute, *see* [*Bh'd of Locomotive Eng'rs v. Mo.-Kan.-Tex. Ry. Co.*], 363 U.S. 528, 534 (1960), this Court never has recognized a general statutory obligation on the part of an employer to maintain the status quo pending the Board's decision.

491 U.S. at 303 (emphasis added). The Fifth Circuit later issued its opinions in *Southwest Airlines*, 875 F.2d at 1136 (citing *Frontier Airlines*, 664 F.2d at 542), and *Allied Pilots Ass'n*, 898 F.2d at 465-66, which discussed the

III. ANALYSIS

A.   The Dispute at Issue is Minor

The Court concludes that the present dispute is minor.  It is apparent from examining the nature of the dispute involved that it is directed toward the interpretation of the parties' existing collective-bargaining agreements.  As already stated by the Court, "[t]he 'distinguishing feature' that differentiates a minor dispute from a major dispute is 'that the dispute may be conclusively resolved by interpreting the existing agreement.'"  *Conrail*, 491 U.S. at 305; *Bhd. of Maint.*, 93 F.Supp.2d at 757.  Regardless of whether BNSF has simply altered its manpower needs, thereby affecting its ability to grant comp-time requests, or whether it has changed its comp-time policy overall, the fact remains that the central issue in dispute is whether the parties' collective-bargaining agreements permit BNSF to take such action.  BNSF contends that the language of the collective-bargaining agreements

_____

circumstances under which an injunction could be issued in a minor dispute. These discussions, however, typically centered around a union's attempt to enjoin a carrier to maintain the status quo.
    Recent case law advanced the discussion regarding injunctions in minor disputes, finding such injunctions appropriate where one party acts illegally pursuant to the RLA; typically, such situations involve surprise strikes by a union.  *See Santa Fe Ry.*, 286 F.3d at 805-09; *Bhd. of Maint. of Way*, 143 F.Supp.2d at 691-95; *Bhd. of Maint.*, 93 F.Supp.2d at 758.  No recent caselaw cites to *Southwest Airlines*'s or *Allied Pilots Association*'s stringent discussions regarding injunctions and minor disputes, yet *Southwest Airlines* and *Allied Pilots Association* have never been overruled by any court.  The Court has therefore drawn the inference that neither *Southwest Airlines* nor *Allied Pilots Association* were overruled by the recent approaches taken.  Instead, the Court will treat the recent case law as merely supplementing the standards provided in *Southwest Airlines* and *Allied Pilots Association* for the issuance of injunctions in minor disputes.

permits BNSF to amend its manpower needs and its review of comp-time-requests. ATDA argues that the terms of the collective-bargaining agreements preclude such unilateral action by BNSF. Both parties disagree over the *interpretation* of the existing agreements. The question is therefore one regarding the "assertion of rights claimed to have vested in the past," not one regarding "the acquisition of rights for the future." *Burley*, 352 U.S. at 723; *Conrail*, 491 U.S. at 302.

ATDA argues that, in revoking its past policy and custom of granting comp-time requests if either a straight-time or overtime replacement is available, BNSF has unilaterally changed the parties' collective-bargaining agreements, making the dispute major. *See Burley*, 352 U.S. at 723; *Conrail*, 491 U.S. at 302-03; *Bhd. of Maint.*, 93 F.Supp.2d at 757 (citation omitted). While it is true that a court must look to past policy and custom when evaluating whether a collective-bargaining agreement governs a dispute or whether a party is attempting to unilaterally amend it, *Conrail*, 491 U.S. at 307 (citing *Northwest Airlines*, 442 F. 2d at 253-254) (quoting *Transportation Union*, 385 U.S. at 161)), the fact remains that both BNSF and ATDA assert that "the terms of an existing agreement either establish or refute the presence of a right to take the disputed action." *Conrail*, 491 U.S. at 305; *see also Bhd. of Maint.*, 93 F.Supp.2d at 757. Where this is the case, the Court must conclude that a dispute is minor where the carrier's

action is arguably justified by the terms of the parties' collective-bargaining agreement; only where the carrier's position is frivolous or obviously insubstantial may the Court conclude that the dispute is major. *Conrail*, 491 U.S. at 307.

Here, BNSF's interpretation of the collective-bargaining agreements at issue is arguably justified. The parties' agreements provide that comp-time may be taken upon 48 hours' advance notice where such leave would be "consistent with the requirements of the carrier's service." (Verified Compl. at Ex. 2, provision III. B.). It is clearly within the province of BNSF to determine what its requirements for service are. Moreover, BNSF arguably could be justified in interpreting the collective-bargaining agreements to provide that comp-time requests are subject to BNSF's determination of its service needs since the agreements specifically state that such requests will be granted upon 48 hours' notice provided they are "consistent with the requirements of the carrier's service." (Verified Compl. at Ex. 2, provision III. B.). Furthermore, while BNSF may have formerly granted comp-time requests when a replacement worker was available at either a straight-time or overtime rate, that fact, alone, does not render as frivolous or obviously insubstantial BNSF's interpretation that it may alter its assessments regarding its manpower needs or amend its procedures in evaluating comp-time requests. *See Bhd. of Maint.*, 93 F.Supp.2d at 757-58. Given that the parties disagree over the interpretation of

18

existing agreements, and because the Court concludes that BNSF's interpretation of the collective-bargaining agreements at issue is arguably justified, the Court concludes that the dispute at issue is minor.[6]

ATDA further avers that BNSF's prior negotiation with ATDA regarding comp-time requests demonstrates that the dispute is major: since BNSF previously sought ATDA's assent to the disputed changes, ATDA argues that BNSF's own actions establish that ATDA's assent was required by the parties' collective-bargaining agreements. But simply because a carrier negotiates with a union over the terms of certain rules and working conditions, however, does not, of itself, establish that disputes over such changes are major. In *St. Louis Railway*, 646 F.2d at 230, the Fifth Circuit held that a railroad's treatment of a dispute as major for two years did not estop the railroad from later treating the dispute as minor. *See id.* at 233-34 ("We do not think that it follows . . . that the railroad's initial acquiescence in treating the dispute as major precludes it from arguing in court that it is minor."). *St. Louis Railway* thus establishes that a party's prior treatment of a

---

[6] The Court notes that its determination that the underlying dispute is minor has no bearing upon the actual merits of BNSF's contention that it may alter the number of comp-time requests granted or its methods for reviewing such requests: "the merits of a dispute [are] an entirely different inquiry than the classification of the dispute as minor or major under the RLA." *Bhd. of Maint.*, 93 F.Supp.2d at 758. The Court makes no finding regarding whether BNSF may actually take the action that is arguably justified by the parties' collective-bargaining agreements. That determination is left solely to the province of the applicable grievance-resolution authority mandated by the RLA.

dispute does not fix forever its position as to that dispute's correct classification. Accordingly, merely because BNSF was willing to negotiate with ATDA regarding a change in overall policy, BNSF has not lost its right to refuse to negotiate or to make such changes unilaterally. The Court must look to the parties' collective-bargaining agreements to determine whether a carrier's interpretation is arguably justifiable, not to the parties' former interactions. Consequently, because BNSF is arguably justified in its interpretation of the collective-bargaining agreements, and because the dispute is directed toward the interpretation of those agreements, the Court must conclude that the dispute is minor and that BNSF's prior negotiations with ATDA regarding the treatment of comp-time requests do not change the status of the present dispute from minor to major.

The dispute is therefore subject to compulsory and binding arbitration before the NRAB or an adjustment board established by BNSF and ATDA. *Conrail*, 491 U.S. at 303; *see also Bhd. of Maint.*, 93 F.Supp.2d at 757. The Court is consequently without jurisdiction over the present dispute. *See Conrail*, 491 U.S. at 303; *Allied Pilots Ass'n*, 898 F.2d at 465; *Bhd. of Maint.*, 93 F.Supp.2d at 757.

B.   BNSF is Not Entitled to Injunctive Relief

BNSF requests that the Court permanently enjoin ATDA from

20

engaging in future strikes should BNSF begin granting comp-time requests on a restricted basis during the pendency of the current dispute.  Such an injunction is unwarranted.  The standard for a permanent injunction is essentially the same as for a preliminary injunction.  *See Icee Distribs. v. J&J Snack Foods Corp.*, 325 F.3d 586, 587 n.34 (5th Cir. 2003); *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).  To obtain a permanent injunction, BNSF must therefore show:  (1) actual success on the merits; (2) an irreparable injury if the injunction is not granted; (3) injury to BNSF if the injunction is not granted outweighs the injury to ATDA if it is granted; and (4) the granting of the permanent injunction will not disserve the public interest.  *See Harris County v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 312 (5th Cir. 1999) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)); *Doe v. KPMG, L.L.C.*, 325 F.Supp.2d 746, 751 (N.D. Tex. 2004); *Millennium Rests. Group, Inc. v. City of Dallas*, 191 F.Supp.2d 802, 809 (N.D. Tex. 2002).  While BNSF has persuaded the Court that the dispute at issue is minor, thereby satisfying the first factor in the analysis, BNSF is unable to demonstrate the second factor--that it will suffer irreparable injury if the injunction is not granted.

While "[a] court's power to grant injunctive relief survives the discontinuance of the illegal conduct" because "the purpose of

an injunction is to prevent future violations," a moving party "must satisfy the court that relief is needed." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also Shanks v. Dallas*, 752 F.2d 1092, 1097 (5th Cir. 1985) (adopting *W.T. Grant*'s requirement that a movant show irreparable injury before the court will issue injunctive relief); *Bhd. of Maint. of Way*, 143 F.Supp.2d at 691-92 (adopting this provision of *W.T. Grant* in RLA case).  In essence, there must exist "some cognizable danger of recurrent violation" before the Court may enter an injunction in favor of BNSF. *W.T. Grant*, 345 U.S. at 633; *see also Bhd. of Maint. of Way*, 143 F.Supp.2d at 691-92.  BNSF, however, has not presented any evidence to the Court that there is a continuing strike threat from ATDA.  Although ATDA previously struck against BNSF when BNSF sought to restrict the number of comp-time requests granted, the parties agreed to await the decision of a federal court as to the nature of the dispute before taking any further action.  (*See* App. to Def.'s Opp'n to Pl.'s Mot. for Prelim. J. at 27).  There is no evidence, or even an indication, that following the Court's ruling ATDA will act in further violation of the RLA.  Since there is no evidence of a continuing threat from ATDA, the Court is without authority to enter injunctive relief in favor of BNSF. *See Bhd. of Maint.*, 93 F.Supp.2d at 758 (issuing an injunction where the summary judgment evidence presented demonstrated that there was a sufficient continuing strike threat to support an injunction).

Furthermore, "[w]hen considering requests for injunctive relief under the RLA, 'courts should hesitate to fix upon the injunctive remedy unless that remedy alone can effectively guard the plaintiff's right.'" *Santa Fe Ry.*, 286 F.3d at 808 (quoting *Chicago & N. W. Ry.*, 402 U.S. at 582. Here there is no indication that only injunctive relief will prevent future strikes by ATDA. The requested injunctive relief is therefore unwarranted.[7]

A carrier, however, may implement the subject of a minor dispute pending arbitration. *See Conrail*, 491 U.S. at 304; *Southwest Airlines*, 875 F.2d at 1133. BNSF is therefore entitled to implement its adjusted review of its manpower needs and dispatchers' comp-time requests pending the outcome of arbitration. *See Burlington N. R. Co. v. Bh'd of Maint. of Way Employees* ("*Burlington N.*"), 961 F.2d 86, 89 (5th Cir. 1992); *see also Bhd. of Maint. of Way*, 143 F.Supp.2d at 677 (citing *BMWE*, 840 F. Supp.

---

[7] The Court notes that the other circumstances in which injunctive relief is granted in minor disputes are not present here. The parties have not yet fully processed and disposed of their dispute in accordance with the grievance procedures established by the RLA. Nor have the parties expressed to the Court how the failure to grant an injunction would either deprive the arbitration board of its jurisdiction or result in irreparable injury.

ATDA does argue that the workers denied comp-time relief during the pendency of the dispute will never be able to have the time requested and denied given back to them. While the dispatchers' inability to take time off as desired is certainly an inconvenience, the Court cannot conclude that it is an irreparable injury. *See Mo.-Kan.-Tex. Ry. Co.*, 363 U.S. at 534 (finding that an injunction in a minor dispute was appropriate where the irreparable injury sought to be prevented was the railroad's changing from steam locomotives to diesel locomotives, which would radically alter the number and location of various crews) ("[t]he dispute out of which the judicial controversy arose does not merely concern rates of pay or job assignments, but rather involves the discharge of employees from positions long held and the dislocation of others from their homes"). Here, rather than suffering the threat of losing their jobs, the dispatchers only suffer from an uncertain ability to take comp-time as requested. Such a circumstance does not threaten an irreparable injury.

at 1236); *Bh'd of Maint.*, 93 F. Supp. 2d at 758.  A strike by ATDA against BNSF in response to BNSF's altered review of comp-time requests would therefore be unlawful under the RLA.   *Id.* Furthermore, the courts have a "responsibility to enforce the mandatory compulsory arbitration obligation [minor disputes are subject to] because 'when an illegal strike occurs over a minor dispute, the employees or the union have violated not only [45 U.S.C.] § 152 First but also [45 U.S.C.] § 153 First (i).'" *Brhd. of Maint. of Way*, 143 F.Supp.2d at 677-78 (citing *Burlington N.*, 961 F.2d at 89).  The Court therefore notes that, should ATDA seek to unlawfully strike against BNSF's implementation of its adjusted review of its manpower needs and dispatchers' comp-time requests during the pendency of the dispute's arbitration, such strike would be in contravention of the RLA, and therefore within the Court's jurisdiction and subject to the Court's injunctive authority.

C.   BNSF's Notice Claims

BNSF does not move for summary judgment as to count III of its complaint.  Even so, the Court concludes that judgment as to that claim is also necessary at this time.

Count III of BNSF's complaint seeks "[a]n injunction requiring advance notice of any future strike by the dispatchers." (Verified Am. Compl. at 10, ¶ 39).  BNSF argues that advance notice of any strike or other form of work stoppage is required by the RLA, 45

U.S.C. § 152 First.   In at least one instance, a court within the Fifth Circuit granted such a request.   *See Bhd. of Maint. of Way*, 143 F.Supp.2d at 691-93, *aff'd*, *Santa Fe Ry.*, 286 F.3d at 808. Such a conclusion is not always warranted, however.   *See Bhd. of Maint.*, 93 F.Supp.2d at 759 (finding that an injunction requiring the defendant/union give 72 hours notice prior to a strike was unjustified, even where the union had struck three times in the preceding eight-year period in minor disputes with the plaintiff/carrier, and struck three other times against other rail carriers in the preceding eight years, one time of which was a minor dispute).   Granting such a request is therefore dependant upon the record of the case.   *Bhd. of Maint. of Way*, 143 F.Supp.2d at 692 (citing *Bhd. of Maint.*, 93 F.Supp.2d at 759-60).

A court must issue injunctions with specificity to protect against their overbroad use.   *United States Steel Corp. v. United Mine Workers*, 519 F.2d 1236, 1245-46 (1975) (citing 29 U.S.C. § 109 (2005)); *see also Santa Fe Ry.*, 286 F.3d at 808-09.[8]   Since

---

[8] The Court notes that the Norris-Laguardia Act ("NLA"), 29 U.S.C. § 101, *et seq.* (2005), "expresses a basic policy against the injunction of the activities of labor unions." *Int'l Bhd. of Machinists v. Street*, 367 U.S. 740, 772 (1961) (citing 29 U.S.C. § 101; *see also Santa Fe Ry.*, 286 F.3d at 807. Courts have continuously held, however, that "the [NLA] does not deprive the federal courts of jurisdiction to enjoin compliance with various mandates of the [RLA]." *Street*, 367 U.S. at 772 (citing 29 U.S.C. § 101; *see also Santa Fe Ry.*, 286 F.3d at 807-08.   While courts should hesitate to grant injunctive relief under circumstances where the NLA is otherwise implicated, the NLA does not bar injunctive relief under 45 U.S.C. § 152 First, since the Supreme Court found "it quite impossible to say that no set of circumstances could arise where a strike injunction is the only practical, effective means of enforcing the command of § [152] First." *Street*, 367 U.S. at 772; *see also Santa Fe Ry.*, 286 F.3d at 808. Since the NLA is not otherwise implicated by the instant case, the Court has not addressed it in the body of this order.

exclusive jurisdiction over the action resides with the grievance-resolution authority to which the parties are subject, the Court does not have jurisdiction over the above-styled and -numbered cause. *See Conrail*, 491 U.S. at 303; *Allied Pilots Ass'n*, 898 F.2d at 465; *Bhd. of Maint.*, 93 F.Supp.2d at 757.  BNSF has also failed to demonstrate how ATDA poses a continuing threat of strike activity, having offered no evidence that ATDA will strike in the future or act in violation of this Court's order or the provisions of the RLA.  The only instance in which ATDA did strike was prior to BNSF's filing of the present suit, at which time it was ATDA's firm belief that the dispute in question was major.  There is no indication that, following this Court's order, ATDA will further violate the RLA.  Under such circumstances, where there can be no showing of irreparable injury, the Court is without authority to grant BNSF the injunctive relief it requests.  Therefore, although BNSF does not move for summary judgment on count III of its complaint, the Court can only conclude that it does not retain jurisdiction over that issue and is unable to grant the nature of relief sought therein.


## IV. CONCLUSION

Therefore, it is ORDERED that BNSF's Motion for Preliminary Injunction or, in the Alternative, for Expedited Decision [doc. # 4] is DENIED.

26

It is further ORDERED that BNSF's Motion for Partial Summary Judgment [doc. # 20] is PARTIALLY GRANTED and PARTIALLY DENIED.

It is further ORDERED that BNSF's motion for partial summary judgment is GRANTED in that the Court hereby DECLARES that the dispute herein described is a minor dispute pursuant to the RLA and is therefore subject to compulsory arbitration pursuant to Section 3 of the RLA, 45 U.S.C. § 153.

It is further ORDERED that BNSF's motion for partial summary judgment is further GRANTED in that the Court hereby DECLARES that ATDA's March 2, 2005, surprise strike violated the RLA, 45 U.S.C. § 152 First.  The Court further DECLARES that any future strike by ATDA in response to BNSF's implementation of its adjusted review of its manpower needs and dispatchers' comp-time requests during the pendency of arbitration without at least ten days advance notice to BNSF violates the RLA, 45 U.S.C. § 152 First.[9]

It is further ORDERED that BNSF's motion for partial summary judgment is DENIED in that the Court does not have the authority to grant, and therefore must deny BNSF's request for, injunctive

---

[9] While the Court did not consider whether the RLA required advance notice of any future strike by ATDA, the Court did conclude that any future strikes by ATDA would violate the provisions of the RLA.  BNSF, however, only requests a declaration that "any future strikes without at least ten days advance notice to BNSF violate" 45 U.S.C. § 152 First.  (Verified Am. Compl. at 11, ¶ 2).  Since BNSF requests a more stringent declaration than the Court otherwise would be able to make, the Court will grant BNSF's request and issue the declaration requested.

relief against ATDA should BNSF implement its desired changes to its review of dispatchers' comp-time requests.[10]

SIGNED May 12, 2005.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/kat

---

[10] The Court notes that resolution of these issues conclusively also resolves the issues raised in ATDA's counterclaim.

28